TESHA V. CHERRY AND BRIDGETTE D. ALLEN, CO-ADMINISTRATRIX OF THE ESTATE OF CRAIG G. ALLEN, PLAINTIFFS v. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., DEFENDANT

No. COA03-14

(Filed 3 February 2004)

**Insurance— automobile—commercial policy—piercing the corporate veil**

The trial court erred in an action arising out of an automobile accident by granting summary judgment in favor of plaintiffs against defendant insurance company based on the erroneous conclusion that plaintiffs were entitled to coverage under a commercial policy of insurance issued by defendant insurance company to a corporation owned and operated by the driver of the pickup truck involved in the collision, because: (1) the insurance policy covered solely owned and temporary substitute vehicles of the insured company, and the pertinent truck did not fall under these exclusions in the subject policy; (2) the driver of the truck was neither an insured nor was the truck he was driving a covered vehicle; and (3) plaintiffs' propounded application of the doctrine of piercing the corporate veil is rejected.

Appeal by defendant from judgment entered 17 October 2002 by Judge Milton F. Fitch, Jr., in Wilson County Superior Court. Heard in the Court of Appeals 16 October 2003.

*Taylor Law Office, by W. Earl Taylor, Jr., for plaintiffs-appellees.*

*Patterson, Dilthey, Clay, Bryson & Anderson, L.L.P., by Mary McHugh Webb and Heather R. Waddell, for defendant-appellant.*

CALABRIA, Judge.

On 10 February 2001, Paul Bryan Jump ("Jump") and William Craig Herring ("Herring") were returning from a field trial competition for foxhounds. Jump was operating Herring's 2000 Chevrolet truck when it collided with a vehicle operated by Craig G. Allen ("Allen"), who was killed as a result of injuries sustained in the accident.

On the date of the accident, Jump was an "insured" under a personal automobile policy issued by State Farm Mutual Automobile Insurance Company ("State Farm") to his wife. State Farm

tendered the policy limits available under this policy to plaintiffs. In addition, plaintiffs accepted the policy limits tendered under Herring's automobile liability insurance on the 2000 Chevrolet truck driven by Jump.

The issue in this case is whether plaintiffs are entitled to coverage under a commercial policy of insurance (the "subject policy") issued by State Farm to B&L Mobile Repair, Inc. ("B&L"), a corporation owned and operated by Jump. On 29 August 2001, Tesha V. Cherry and Bridgette D. Allen, co-administratrix of Allen's estate, brought a declaratory judgment action to determine the rights and responsibilities of the parties.

State Farm moved for summary judgment on plaintiffs' claims pursuant to Rule 56 of the North Carolina Rules of Civil Procedure, asserting the subject policy did not provide coverage to Jump as an "insured" or to the vehicle he operated as an insured vehicle. Plaintiffs asserted the corporate veil of B&L should be pierced and the corporate form disregarded so as to provide coverage to Jump as the insured. After examining the insurance contract and hearing oral arguments, the trial court denied State Farm's summary judgment motion and granted summary judgment to plaintiffs. State Farm appeals.

"Summary judgment is designed to 'ferret out those cases in which there is no genuine issue as to any material fact and in which, upon such undisputed facts, a party is entitled to judgment as a matter of law.' " *Cameron & Barkley Co. v. American Insurance Co.*, 112 N.C. App. 36, 39, 434 S.E.2d 632, 634 (1993) (quoting *Haithcock v. Chimney Rock Co.*, 10 N.C. App. 696, 698-99, 179 S.E.2d 865, 867 (1971)). "The construction and application of insurance policy provisions to undisputed facts is a question of law, properly committed to the province of the trial judge for a summary judgment determination." *Certain Underwriters at Lloyd's London v. Hogan*, 147 N.C. App. 715, 718, 556 S.E.2d 662, 664 (2001).

We begin by setting forth several well-settled principles governing the construction of insurance policies. " '[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto[.]' " *Id.* (quoting *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986)). " '[A]s with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued.' " *Id.* (quoting *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978)). "The

parties' intent may be derived from the language employed in the policy." *Rouse v. Williams Realty Bldg. Co.*, 143 N.C. App. 67, 69, 544 S.E.2d 609, 612 (2001).

> In determining the meaning of the language used in an insurance policy, the following general rules of construction apply: "Where a policy defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect. If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder. Whereas, if the meaning of the policy is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein."

*Hogan*, 147 N.C. App. at 718-19, 556 S.E.2d at 664-65 (quoting *Woods*, 295 N.C. at 505-06, 246 S.E.2d at 777); *see also Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000). With these principles in mind we turn to the subject policy to see whether the vehicle being operated at the time of the accident was a covered vehicle under the policy or whether Jump was a person to whom the policy provided coverage as an insured.

I. Covered Vehicles

There is no dispute the 2000 Chevrolet truck was not a vehicle covered by the subject policy issued to B&L. Liability insurance is vehicle-oriented rather than person-oriented, *Smith v. Nationwide Mutual Ins. Co.*, 328 N.C. 139, 148, 400 S.E.2d 44, 50 (1991); *Haight v. Travelers/Aetna Property Casualty Corp.*, 132 N.C. App. 673, 679, 514 S.E.2d 102, 106 (1999), and we have upheld exclusions that limit "liability coverage to personal injury or property damage arising out of the ownership, maintenance or use of the covered vehicle." *Haight*, 132 N.C. App. at 679, 514 S.E.2d at 106.

The subject policy provided State Farm would pay, on behalf of the insured, any amount the insured was legally obligated to pay as damages due to bodily injury or property damage covered if "caused

by an occurrence and arising out of the ownership, maintenance or use, . . . of an owned automobile or of a temporary substitute automobile . . . ." An owned automobile was defined, in pertinent part, as one "owned by the named insured and described in the declarations[.]" In the instant case, the subject policy set forth two owned automobiles, a 1992 Dodge truck used primarily by Jump for business purposes and a 1983 Toyota truck used by Jump to get to and from work and around town. Neither of these trucks were the trucks driven by Jump at the time of the accident.

The subject policy also provided coverage for temporary substitute automobiles. This category included any "automobile not owned by the named insured or any resident of the same household, while temporarily used with the permission of the owner as a substitute for an owned automobile when withdrawn from normal use for servicing or repair or because of its breakdown, loss, or destruction[.]" Herring's 2000 Chevrolet truck driven by Jump could not be considered a temporary substitute vehicle since it was not being used as a replacement for an owned automobile withdrawn from normal use. Accordingly, the exclusions in the subject policy preclude the conclusion that it provided coverage for the vehicle driven by Jump in the instant case.

II. Piercing the Corporate Veil

Plaintiffs ask this Court to pierce the corporate veil of B&L, the named insured. Plaintiffs assert that once the corporate veil is pierced, B&L would have no legal independent existence from Jump; therefore, Jump would be construed as the insured under the subject policy at the time of the accident in which Allen was killed. We find plaintiffs' proposed use of the doctrine of piercing the corporate veil misplaced.

"[T]he doctrine that a corporation is a legal entity distinct from the persons composing it is a legal fiction devised to serve the ends of justice." *Atlantic Tobacco Co. v. Honeycutt*, 101 N.C. App. 160, 164, 398 S.E.2d 641, 643 (1990). The doctrine of disregarding a corporation's separate and independent existence is commonly referred to as piercing the corporate veil, and we do not invoke it lightly. *Department of Transp. v. Airlie Park, Inc.*, 156 N.C. App. 63, 68, 576 S.E.2d 341, 344, *appeal dismissed by*, 357 N.C. 504, —— S.E.2d —— (2003). *Accord Keener Lumber Co. v. Perry*, 149 N.C. App. 19, 37, 560 S.E.2d 817, 829, *disc. rev. denied*, 356 N.C. 164, 568 S.E.2d 196 (2002) (quoting *Dorton v. Dorton*, 77 N.C. App. 667, 672, 336

S.E.2d 415, 419 (1985)) (noting that piercing the corporate veil is " 'a drastic remedy' and 'should be invoked only in an extreme case where necessary to serve the ends of justice' "). "Piercing the corporate veil of a corporation allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other company or individual that controls and dominates the corporation." *Id.*

Plaintiffs have not asserted Jump has dominated or controlled B&L for the purpose of imposing the legal liability of B&L's obligations on Jump and thereby reach Jump's individual assets. Rather, plaintiffs ask this Court to disregard B&L's separate corporate identity under the doctrine of piercing the corporate veil for the purpose of reaching State Farm's coverage. Granting plaintiffs' request would be tantamount to rewriting the terms of the subject policy by requiring State Farm, B&L's liability insurance provider, to cover someone other than the named insured. Plaintiffs have cited no authority supporting the application of piercing the corporate veil in this manner, and we decline to adopt it.

In summary, the insurance policy by State Farm covered solely owned and temporary substitute vehicles of B&L, the insured. Jump was neither an insured, nor was the truck he was driving a covered vehicle. We reject plaintiffs' propounded application of the doctrine of piercing the corporate veil. Accordingly, the trial court erred in granting summary judgment in favor of plaintiffs against State Farm. The judgment of the trial court is reversed, and the case is remanded with instructions to enter summary judgment for State Farm.

Reversed and remanded with instructions.

Judges McGEE and HUDSON concur.