FISCHER INVESTMENT CAPITAL, INC., Plaintiff v. CATAWBA DEVELOPMENT CORPORATION, RIDGELINE REAL ESTATE CORPORATION, MARK W. LEWIS and DEBRA D. LEWIS a/k/a DEBRA DOWNS LEWIS a/k/a DEBRA DOWNS, Defendants

No. COA08-1407

(Filed 3 November 2009)

**1. Corporations— piercing corporate veil—instrumentality rule**

The trial court erred by concluding that plaintiff's complaint failed to state a claim for piercing defendant's corporate veil because plaintiff's pleading asserted facts that, if proven to be true, would establish all the elements for piercing the corporate veil under the instrumentality rule.

**2. Fraud— fraudulent transfer of real property**

The trial court erred by concluding that plaintiff's complaint failed to state a claim for fraudulent transfer of property under N.C.G.S. §§ 39-23.4(a)(1) and 39-23.5(a) because the language of plaintiff's complaint tracked the relevant statutory language of N.C.G.S. § 39-23.4(a)(1) and plaintiff's complaint complied with the requirements of N.C.G.S. § 39-23.5(a).

Appeal by Plaintiff from judgment entered 28 July 2008 by Judge Dennis J. Winner in Buncombe County Superior Court. Heard in the Court of Appeals 22 April 2009.

*Robinson, Bradshaw & Hinson, P.A., by Robert E. Harrington, for Plaintiff-Appellant.*

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Michelle D. Rippon and Craig D. Justus, for Defendant-Appellees Ridgeline Real Estate Corporation and Debra D. Lewis.*

ERVIN, Judge.

Fischer Investment Capital, Inc. (Plaintiff), appeals from judgment entered 28 July 2008 granting Defendants' motion to dismiss for failure to state a claim for which relief can be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). After careful consideration of the allegations of Plaintiff's complaint in light of the applicable law, we reverse the trial court's order dismissing Plaintiff's complaint and remand this case to the Buncombe County Superior Court for further proceedings not inconsistent with this opinion.

Factual Background

On 12 August 2005,[1] HCL Partnership, LLP (HCL), executed a promissory note in favor of Plaintiff in the original principal amount of $400,000.00 (HCL Note). The HCL Note permitted future advances and provided for a 10 percent annual interest rate. Mark W. Lewis (Defendant Mark Lewis) personally guaranteed all obligations of HCL to Plaintiff under the HCL Note.

Between 12 August 2005 and March 2006, Plaintiff loaned a total principal amount of $496,059.00 to HCL under the HCL Note. HCL was obligated to repay the original principal amount of $400,000.00 plus $40,000.00 in interest on or before 12 August 2006. HCL defaulted on its obligations to Plaintiff under the HCL Note by failing to make the required payment by 12 August 2006, resulting in the acceleration of its obligations under the HCL Note. Upon acceleration, HCL and its guarantors, including Defendant Mark Lewis, became obligated to pay the full amount owed under the HCL Note, including subsequent advances and interest.

On 16 September 2005, Catawba Development Corporation (Defendant Catawba), Defendant Mark Lewis, and others, as individual makers, executed a promissory note in the amount of $785,000.00 in favor of Plaintiff (Grovestone Note). The Grovestone Note was secured by a deed of trust that applied to a 76.79 acre tract of property (Grovestone Property) that was located in Buncombe County and owned by Defendant Catawba. The Grovestone Note included the following provision:

9. SALE OF PREMISES: Grantor ["Catawba"] agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor . . . without the prior written consent of [Plaintiff], [Plaintiff], at its option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable.

The Grovestone Note was due in full on or before 16 March 2006. .

At the time of the execution of the Grovestone Note, Defendant Mark Lewis owned 99 percent of the stock in Defendant Catawba and his wife, Debra Lewis (Defendant Debra Lewis), owned the remaining

---

1. The substantive facts recited in the text of this opinion are derived from the allegations of the Plaintiff's complaint, which must be taken as true for purposes of analyzing its sufficiency pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). *Barnaby v. Boardman*, 313 N.C. 565, 566, 330 S.E.2d 600, 601 (1985).

1 percent. Defendant "Mark Lewis . . . operated [Defendant] Catawba in such a manner that [Defendant] Catawba [was] a mere instrumentality and the alter ego of [Defendant] Mark Lewis." Among other things, Plaintiff alleged that Defendant Catawba failed to comply with required corporate formalities, that Defendant Catawba had been left insolvent as the result of a transfer that siphoned off all of Defendant Catawba's assets for the benefit of Defendant Mark Lewis, and that no other corporate officer of Defendant Catawba aside from Defendant Mark Lewis had exercised any influence over the actions of Defendant Catawba.

Defendant Catawba and the other makers of the Grovestone Note defaulted on their obligations under that instrument by failing to make timely payment. As a result, Plaintiff retained an attorney for the purpose of foreclosing on the Grovestone Property under the deed of trust that secured the Grovestone Note. In December 2006, Defendant Mark Lewis informed Plaintiff that Catawba would "refinance" the Grovestone Note. At that time, Defendant Mark Lewis' interest in Defendant Catawba and, through Defendant Catawba, in the Grovestone Property, was "one of [Defendant Mark Lewis'] few, if not his only, substantial personal asset[s]." Based upon representations made by Defendant Mark Lewis, Plaintiff believed that a transaction subsequently proposed by Defendant Mark Lewis "would be a refinancing of the Grovestone Note and would not involve a sale or conveyance of the Grovestone Property." Defendant Mark Lewis never indicated to Plaintiff that Defendant Catawba intended to convey the Grovestone Property to a third party.

On 26 February 2007, the Grovestone Property was conveyed to Ridgeline Real Estate Corporation (Defendant Ridgeline) for $1,200,000.00. Defendant Ridgeline is controlled by Defendant Debra Lewis, who is the corporate secretary of Defendant Catawba and the president and the sole or majority stockholder of Defendant Ridgeline. On or about 27 February 2007, Defendant Catawba, acting under the direction and control of Defendant Mark Lewis, made a payment to Plaintiff against its obligation under the Grovestone Note. However, since the proceeds from the sale of the Grovestone Property to Defendant Ridgeline were insufficient to fully satisfy Defendant Catawba's debt to Plaintiff, Defendant Catawba, Defendant Mark Lewis, and two other individual makers executed a new unsecured note (Second Grovestone Note) in favor of Plaintiff in the principal amount of $26,500.00 which was due on 27 August 2007.

FISCHER INV. CAPITAL, INC. v. CATAWBA DEV. CORP.

[200 N.C. App. 644 (2009)]

At the time that these transactions occurred, Defendant Mark Lewis was in default in his obligations to Plaintiff under the HCL Note. Plaintiff did not know that the Grovestone Property had been transferred to Defendant Ridgeline at the time of the execution and acceptance of the Second Grovestone Note. Had Plaintiff been aware of the conveyance of the Grovestone Property from Defendant Catawba to Defendant Ridgeline, Plaintiff would have foreclosed on the Grovestone Property, given Defendant Mark Lewis' obligation to Plaintiff under the HCL Note and the value of the Grovestone Property.

On 22 August 2007, Plaintiff mailed Defendant Lewis the original Grovestone Note and original deed of trust applicable to the Grovestone Property marked "satisfied" along with a letter from Plaintiff's attorneys demanding payment in full under the HCL Note and indicating that they had authority from Plaintiff to file suit against him on the guarantee in order to obtain payment of all principal, interest, attorneys' fees, and expenses due under that instrument. Defendant Mark Lewis refused to accept the certified mail package containing these items.

Plaintiff ultimately filed suit against Defendant Mark Lewis under the HCL Note. On 24 January 2008, a default judgment was entered against Defendant Mark Lewis in the United States District Court for the Western District of North Carolina in the principal amount of $665,696.74, including attorneys' fees, plus continuing interest at the legal rate and the costs. Defendant Catawba and the individual makers ultimately defaulted on the Second Grovestone Note as well. On 25 January 2008, Plaintiff obtained a default judgment against Defendant Mark Lewis in the Yancey County Superior Court on the Second Grovestone Note in the principal amount of $38,671.60, plus $5,199.36 in attorneys' fees and continuing interest.

Procedural History

On 25 January 2008, Plaintiff filed a verified complaint in the Buncombe County Superior Court against Defendant Catawba, Defendant Mark Lewis, Defendant Ridgeline, and Defendant Debra Lewis[2] in which it requested the court to "set aside and declare void" the conveyance of the Grovestone Property from Defendant Catawba to Defendant Ridgeline on the grounds that Defendant Catawba's assets, including the Grovestone Property, should be made available

---

2. Plaintiff named Defendant Debra Lewis in a number of different and alternative ways in its complaint.

FISCHER INV. CAPITAL, INC. v. CATAWBA DEV. CORP.

[200 N.C. App. 644 (2009)]

to satisfy Defendant Mark Lewis' obligations to Plaintiff under the HCL note. In support of this contention, Plaintiff alleged that Defendant Catawba served as the alter ego of Defendant Mark Lewis, such that Defendant Catawba's separate corporate identity should be disregarded and the assets of Defendant Catawba treated as the personal assets of Defendant Mark Lewis. According to Plaintiff, such a result would be particularly appropriate given that Defendant Mark Lewis and Defendant Catawba had transferred the Grovestone Property to Defendant Ridgeline in violation of N.C. Gen. Stat. § 39-23.4(a)(1) and N.C. Gen. Stat. § 39-23.5(a). As a result, Plaintiff asserted claims against Defendant Catawba and Defendant Mark Lewis seeking the "piercing" of Defendant Catawba's "corporate veil" and against all Defendants for the purpose of having the transfer of the Grovestone Property set aside as a fraudulent transfer.

On 19 May 2008, Defendant Catawba and Defendant Mark Lewis filed an Answer and Counterclaim in which they sought the dismissal of Plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6); denied the material allegations of Plaintiff's complaint; asserted affirmative defenses predicated on alleged violations of N.C. Gen. Stat. § 53-243.02, accord and satisfaction, and the existence of a good faith transfer for value; and asserted a counterclaim alleging that, as a result of the "trifurcation" of the HCL Note, Defendant Mark Lewis had satisfied his obligations to Plaintiff under the HCL Note, rendering Plaintiff liable to Defendant Mark Lewis for abuse of process. On the same date, Defendant Debra Lewis and Defendant Ridgeline filed a motion to dismiss Plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). On 2 July 2008, Defendant Catawba and Defendant Mark Lewis filed an amended Answer and Counterclaim in which they withdrew their affirmative defense based on Plaintiff's alleged violation of N.C. Gen. Stat. § 53-243.02.

Defendants' dismissal motions came on for hearing before the trial court on or about 17 July 2008. Plaintiffs, Defendant Debra Lewis, and Defendant Ridgeline submitted briefs for the trial court's consideration.[3] On 28 July 2008, the trial court entered a Judgment of Dismissal in which it concluded that "neither the Complaint nor the Counterclaim state a claim upon which relief can be granted and that the same are THEREFORE DISMISSED." On 26 August 2008, Plaintiff noted an appeal to this Court from the trial court's Judgment of Dismissal.

---

3. Throughout the remainder of this opinion, unless the context clearly indicates otherwise, "Defendants" refers to Defendant Debra Lewis and Defendant Ridgeline.

**FISCHER INV. CAPITAL, INC. v. CATAWBA DEV. CORP.**

[200 N.C. App. 644 (2009)]

## Analysis

"On a Rule 12(b)(6) motion to dismiss, the question is whether, as a matter of law, the allegations of the complaint, treated as true, state a claim upon which relief can be granted." *Schlieper v. Johnson*, —— N.C. App. ——, ——, 672 S.E.2d 548, 551 (2009). A complaint should be dismissed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) when one of the following three conditions is satisfied: "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Wood v. Guilford Cty.*, 355 N.C. 161, 166, 558 S.E.2d 490, 494 (2002) (citation omitted). "A complaint should not be dismissed under Rule 12(b)(6) . . . unless it affirmatively appears that plaintiff is entitled to no relief under any state of facts which could be presented in support of the claim." *Ladd v. Estate of Kellenberger*, 314 N.C. 477, 481, 334 S.E.2d 751, 755 (1985) (citation and quotation omitted).

In its complaint, Plaintiff alleged (1) that Defendant Catawba's corporate veil should be pierced in order to allow Plaintiff to reach Defendant Catawba's assets for the purpose of satisfying Defendant Mark Lewis' obligation to Plaintiff under the HCL Note and (2) that the conveyance of the Grovestone Property from Defendant Catawba to Defendant Ridgeline should be set aside as a fraudulent transfer under N.C. Gen. Stat. §§ 39-23.4(a)(1) and 39-23.5(a) so as to enable Plaintiff to use the Grovestone Property to satisfy its claim against Defendant Mark Lewis under the HCL Note. In order for Plaintiff to reach the Grovestone Property to obtain satisfaction of Defendant Mark Lewis' personal obligations to Plaintiff under the HCL Note, Plaintiff would have to prevail on both claims or obtain nothing of any practical benefit.

## I: Piercing the Corporate Veil

[1] First, we address Plaintiff's contention that the trial court erred by concluding that Plaintiff failed to allege a claim for the "piercing" of Defendant Catawba's "corporate veil." "[C]ourts will disregard the corporate form or 'pierce the corporate veil,' and extend liability for corporate obligations beyond the confines of a corporation's separate entity, whenever necessary to prevent fraud or to achieve equity." *Glenn v. Wagner*, 313 N.C. 450, 454, 329 S.E.2d 326, 330 (1985) (citation omitted). "In North Carolina, what has been commonly referred to as the 'instrumentality rule,' forms the basis for disregarding the

corporate entity or 'piercing the corporate veil.' " *Wagner*, 313 N.C. at 454, 329 S.E.2d at 330. The "instrumentality rule" has been described as follows:

> "[A] corporation which exercises actual control over another, operating the latter as a mere instrumentality or tool, is liable for the torts of the corporation thus controlled. In such instances, the separate identities of parent and subsidiary or affiliated corporations may be disregarded."

*Id.* (quoting *B-W Acceptance Corp. v. Spencer*, 268 N.C. 1, 8, 149 S.E. 2d 570, 575 (1966)). We approved "reverse piercing," the strategy that Plaintiff seeks to utilize here, in *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 254, 625 S.E.2d 800, 804 (2006), in which we stated that, "where one entity is the alter-ego, or mere instrumentality, of another entity, shareholder, or officer, the corporate veil may be pierced to treat the two entities as one and the same, so that one cannot hide behind the other to avoid liability."

An attempt to pierce the corporate veil under the "instrumentality rule" requires the successful plaintiff to establish three things:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*B-W Acceptance Corp.*, 268 N.C. at 9, 149 S.E.2d at 576 (citation omitted). Among the factors that have been considered under the rubric of the first, or "control," element of the "instrumentality rule" are the following:

1. Inadequate capitalization ("thin incorporation").

2. Non-compliance with corporate formalities.

3. Complete domination and control of the corporation so that it has no independent identity.

4. Excessive fragmentation of a single enterprise into separate corporations.

*East Mkt. St. Square, Inc. v. Tycorp Pizza IV, Inc.*, 175 N.C. App. 628, 636; 625 S.E.2d 191; 198 (2006). "[T]he presence or absence of any particular factor . . . is [not] determinative." *Tycorp Pizza IV, Inc.*, 175 N.C. App. at 636, 625 S.E.2d at 198. "Rather, it is a combination of factors which . . . suggest that the corporate entity attacked had 'no separate mind, will or existence of its own' and was therefore the 'mere instrumentality or tool' of the dominant corporation." *Id.*, 175 N.C. App. at 636, 625 S.E.2d at 198 (quoting *Wagner*, 313 N.C. at 458, 329 S.E.2d at 332). Thus, the issue raised by this portion of Plaintiff's challenge to the trial court's Judgment of Dismissal is whether Plaintiff's complaint alleged facts that would, if believed, tend to establish all three elements of the "instrumentality rule."

In its complaint, Plaintiff made the following allegations in support of its request for the "piercing" of Defendant Catawba's "corporate veil":

33. Mark Lewis has operated Catawba in such a manner that Catawba is a mere instrumentality and the alter ego of Mark Lewis.

34. On information and belief, Mark Lewis owns approximately 99% of the stock of Catawba, and his wife, Debra Lewis, owns the remaining 1% of the stock of Catawba.

35. The corporate form of Catawba should be disregarded to permit Fischer to reach the assets of Catawba (and to set aside the fraudulent transfer of the Grovestone Property from Catawba to Ridgeline) to satisfy the debt of Mark Lewis. Facts supporting disregarding the corporate form of Catawba, or piercing the corporate veil of Catawba, include, but are not limited to the following:

a. Mark Lewis has completely dominated and controlled Catawba by, *inter alia*, transferring the assets of Catawba (including, but not necessarily limited to, the Grovestone Property) to Ridgeline shortly after HCL defaulted on its obligation to Fischer under the HCL Note, on which Mark Lewis is obligated as guarantor;

b. Mark Lewis has completely dominated and controlled Catawba by transferring assets of Catawba to a corporation controlled by Mark Lewis's wife, Debra Downs;

   c. Catawba has failed to file annual reports with the North Carolina Secretary of State's office and, on information and belief, has otherwise failed to comply with corporate formalities;

   d. On information and belief, Catawba's conveyance of the Grovestone Property to Ridgeline has left Catawba insolvent;

   e. Mark Lewis's conduct in causing Catawba to transfer its assets to Ridgeline, a corporation controlled by Debra Lewis, has resulted in the siphoning off assets of Catawba for the benefit of Mark Lewis, an officer, director, and the dominant shareholder of Catawba; and

   f. No other officer or director of Catawba other than Mark Lewis has exercised any control or function in connection with the conveyance of the Grovestone Property to Ridgeline, or, on information and belief, in connection with the other activities of Catawba.

36. Mark Lewis has used his control of Catawba to transfer the Grovestone Property from Catawba to Ridgeline, and, on information and belief, in other ways, for the purpose of defrauding his creditors and the creditors of Catawba, including Fischer.

37. Mark Lewis's control of Catawba and, in particular, his conduct in causing Catawba to transfer the Grovestone Property to Ridgeline, has proximately caused injury to Fischer in that Fischer has been hindered in reaching Mark Lewis's interest in the Grovestone Property.

38. Injustice will result to Fischer if Mark Lewis is allowed to operate Catawba as his instrumentality, *inter alia*, by conveying Catawba's substantial assets to a corporation controlled by Mark Lewis's wife for the purpose of avoiding payment of his debt to Fischer.

After carefully analyzing these allegations, which must be taken as true for purposes of analyzing the extent to which they are sufficient to survive a dismissal motion lodged pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6), *Barnaby*, 313 N.C. at 566, 300 S.E.2d at 601, we conclude that Plaintiff has alleged sufficient facts to state a claim for relief as to whether Defendant Catawba's corporate veil should be

pierced. We reach this conclusion by juxtaposing the allegations of Plaintiff's complaint against the three components of the "instrumentality rule."

First, Plaintiff has alleged that Defendant Lewis "completely dominated and controlled Catawba" by "transferring the assets of Catawba (including, but not necessarily limited to, the Grovestone Property) to Ridgeline shortly after HCL defaulted on its obligation to Fischer;" that Defendant Catawba "failed to file annual reports with the North Carolina Secretary of State's office;" and that "Catawba's conveyance of the Grovestone Property to Ridgeline has left Catawba insolvent." These allegations provide adequate support for a conclusion that Defendant Mark Lewis exercised "complete domination, not only of finances, but of policy and business practice[s] . . . so that the corporate entity . . . had . . . no separate mind, will or existence of its own." *B-W Acceptance Corp.*, 268 N.C. at 9, 149 S.E.2d at 576. More particularly, the allegations of Plaintiff's complaint address three of the four factors relevant to the "control" component of the "instrumentality rule" set out in *Tycorp Pizza IV, Inc.*, 175 N.C. App. at 636, 625 S.E.2d at 198: "inadequate capitalization"; "non-compliance with corporate formalities"; and "complete domination and control of the corporation so that it has no independent identity." As a result, the allegations of Plaintiff's complaint are more than sufficient to satisfy the requirements for pleading the first component of the "instrumentality rule[.]"

With respect to the second, or "improper purpose," component of the "instrumentality rule," Plaintiff's complaint alleges that "Mark Lewis has used his control of Catawba to transfer the Grovestone Property from Catawba to Ridgeline . . . for the purpose of defrauding his creditors and the creditors of Catawba, including Fischer." This part of Plaintiff's complaint clearly alleges that Defendant Mark Lewis used his control over Defendant Catawba "to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights." *B-W Acceptance Corp.*, 268 N.C. at 9, 149 S.E.2d at 576.[4]

---

4. Defendant Debra Lewis and Defendant Ridgeline argue that Plaintiff's complaint fails to adequately allege facts supporting the second component of the "instrumentality rule" because Plaintiff failed to allege that any fraudulent conduct engaged in by Defendant Mark Lewis or Defendant Catawba bore any relation to the HCL Note. Assuming, without in any way deciding, that there is any required nexus between the HCL Note and the conduct of Defendant Mark Lewis or Defendant Catawba, we believe that Plaintiff's allegations that Defendant Mark Lewis' use of "his control of Catawba to transfer the Grovestone Property from Catawba to Ridgeline . . . for the purpose of

In addition, contrary to Defendants' description of Plaintiff's allegations of fraud as impermissibly conclusory, we believe that Plaintiff has adequately explained the exact nature of the fraudulent conduct in which it contends that the Defendants allegedly engaged. As a result, the allegations of Plaintiff's complaint are sufficient to satisfy the second, or "improper purpose," component of the "instrumentality rule" as well.

Finally, Plaintiff's complaint alleged that ·Defendant "Mark Lewis's control of Catawba and, in particular, his conduct in causing Catawba to transfer the Grovestone Property to Ridgeline, has proximately caused injury to Fischer in that Fischer has been hindered in reaching Mark Lewis's interest in the Grovestone Property." Once again, Plaintiff has clearly alleged in its complaint that "[t]he aforesaid control and breach of duty . . . proximately cause[d] the injury or unjust loss complained of." *B-W Acceptance Corp.*, 268 N.C. at 9, 149 S.E2.d at 576. As a result, we conclude that Plaintiff's complaint sufficiently alleges facts supporting the third and final element of the "instrumentality rule" as well.

In defending the trial court's Judgment of Dismissal, Defendant Debra Lewis and Defendant Ridgeline advance several arguments that have not been addressed above, including contentions that the effect of recognizing Plaintiff's theory is to impose liability for the HCL Note on Catawba in a manner that is inconsistent with a number of prior decisions of the North Carolina appellate courts and that North Carolina does not or, in the alternative, should not recognize "reverse veil piercing" outside the personal jurisdiction context. We do not find these arguments persuasive.

In support of their first argument, Defendants cite the decision of this Court in *Statesville Stained Glass, Inc. v. T.E. Lane Construction & Supply Co.*, 110 N.C. App. 592, 430 S.E.2d 437 (1993), for the proposition that "the piercing of the corporate veil of a construction company" was not appropriate when the corporation in question "had not contracted to do the work complained of by the plaintiff." In other words, it appears that Defendants read *Statesville Stained Glass* as precluding piercing of the veil of any corporation

---

defrauding his creditors and the creditors of Catawba, including Fischer" and that the transfer of the Grovestone Property from Catawba to Ridgeline had "proximately caused injury to Fischer in that Fischer has been hindered in reaching Mark Lewis' interest in the Grovestone Property" adequately allege a substantial nexus between any fraudulent conduct on the part of Defendant Mark Lewis and Defendant Catawba on the one hand and the HCL Note on the other.

FISCHER INV. CAPITAL, INC. v. CATAWBA DEV. CORP.

[200 N.C. App. 644 (2009)]

that is not directly involved in the transaction from which the underlying claim arises. However, a careful reading of *Statesville Stained Glass* establishes that the Court actually held that the plaintiff had failed to adduce sufficient evidence to support piercing the corporate veil between the individual defendant and a dissolved corporation and that a new corporation was not a successor to, and therefore liable for the debts of, the dissolved corporation. As a result, the claims asserted by the plaintiff in *Statesville Stained Glass* failed because the plaintiff failed to provide sufficient evidentiary support for them, not because those claims were not cognizable under North Carolina law.

In addition, Defendants place considerable reliance on *Cherry v. State Farm Mutual Automobile Insurance. Co.*, 162 N.C. App. 535, 590 S.E.2d 925 (2004). In *Cherry*, the plaintiff, who had initiated a related wrongful death action, sought a declaration that a defendant in that wrongful death action was covered under a corporate automobile liability insurance policy using a "veil piercing" theory. In refusing to "disregard [the corporation's] separate corporate identity under the doctrine of piercing the corporate veil for the purpose of reaching State Farm's coverage," this Court stated that "[g]ranting plaintiff's request would be tantamount to rewriting the terms of the subject policy by requiring State Farm . . . to cover someone other than the named insured;" that "[p]laintiffs have cited no authority supporting the application of piercing the corporate veil in this manner[;]" and that "we decline to adopt it." *Cherry*, 162 N.C. App. 539, 590 S.E.2d 929. After carefully reviewing *Cherry*, we do not believe that it is controlling on the present facts, which are very different from those before the Court in *Cherry*.

Had the Court approved the "veil piercing" proposed in *Cherry*, the effect of that decision would have been to expand the liability of State Farm even though State Farm was not in any way involved in the conduct that allegedly supported the piercing of the corporate veil or in any alleged fraudulent transfer. The same cannot be said about the present set of circumstances, in which all of the Defendants, either directly or indirectly, are alleged to have been involved in the conduct which forms the basis for Plaintiff's claim that Defendant Catawba conveyed the Grovestone Property to Defendant Ridgeline for the purpose of helping to defeat the claim of Defendant Mark Lewis' creditors. Thus, we do not believe that *Cherry* provides any basis for refusing to recognize the "veil piercing" claim that Plaintiff has sought to assert in this case.

As a result, we are not persuaded that Plaintiff's claim amounts to an impermissible attempt to make Defendant Catawba liable for the HCL Note despite the fact that Catawba is not a party to that instrument. Instead, what Plaintiff is attempting to accomplish is, by means of allegations that we will consider in more detail below, (1) to have the transfer of the Grovestone Property from Defendant Catawba to Defendant Ridgeline set aside as a fraudulent transfer and (2) to have the "corporate veil" between Defendant Mark Lewis and Defendant Catawba "pierced" in order to make the assets of Defendant Catawba available to satisfy Defendant Mark Lewis' obligations.[5] Given Plaintiff's reliance on this theory, we are not persuaded that the fact that Catawba did not participate in the making of the HCL Note has any relevance to Plaintiff's ability to maintain the present action. Similarly, given the theory that Plaintiff has adopted, the fact that Plaintiff initially chose to do business with HCL and Defendant Mark Lewis rather than with Defendant Catawba does not constitute such an insurmountable barrier to the maintenance of the present action as to require its dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). Although the economic effect of the approach that Plaintiff espouses may be similar to subjecting Defendant Catawba to liability on the HCL Note, the two legal theories are not the same, since Plaintiff would not be able to reach Catawba's assets to satisfy Defendant Mark Lewis' obligations under the HCL Note unless it is able to establish that Defendant Catawba's corporate veil should be disregarded. As a result, we are not persuaded by Defendants' first argument in support of the trial court's Judgment of Dismissal.

Secondly, Defendants argue that "reverse veil piercing" has not been recognized except for the purpose of establishing personal jurisdiction and that we "should reject extending the doctrine of 'piercing' as a substantive basis for claims imposing obligations in reverse." We do not find any support for Defendants' argument in the

---

5. Defendants contend that Plaintiff should be relegated to attempting to obtain satisfaction of Defendant Mark Lewis' obligation under the HCL Note by executing on his interest in Defendant Catawba rather than by taking Defendant Catawba's assets directly. However, Defendants have cited no North Carolina authority in support of this argument, and we know of no reason why Plaintiff's options should be limited in this fashion given this jurisdiction's prior approval, as is discussed in more detail below, of "reverse veil piercing." We are particularly loath to accept this argument while evaluating the appropriateness of a dismissal pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) given Plaintiff's allegations that Defendant Mark Lewis' interest in Defendant Catawba is worthless and that Defendant Catawba, at a time when it was under the domination of Defendant Mark Lewis, transferred its most valuable asset for the purpose of hindering the ability of Defendant Mark Lewis' creditors to obtain payment.

relevant decisions. Although both *Rose's Stores, Inc. v. Padgett* and *Strategic Outsourcing* arose in the context of a dispute over personal jurisdiction issues, it is clear from an examination of our opinions in those cases that the theory upon which we sustained an assertion of personal jurisdiction over the corporate defendant was identical to the substantive legal theory upon which the plaintiff relied. In other words, neither *Padgett* nor *Strategic Outsourcing* makes the distinction between the personal jurisdiction context and the substantive liability context upon which Defendants rely, necessitating a conclusion that "reverse veil piercing is a recognized legal theory in North Carolina for substantive as well as jurisdictional purposes. R. Robinson, *1-2 Robinson on North Carolina Corporation Law* § 2.10[1] (2007) ("Occasionally, a 'reverse piercing' of the corporate entity may be allowed to make the assets of the entity available to pay the personal debts of the owner"). In addition, even if some doubt about the availability of "reverse veil piercing" for substantive as well as jurisdictional purposes remained, we do not find the logic adopted in *Postal Instant Press, Inc. v. Kaswa Corporation*, 162 Cal. App. 4th 1510, 1523, 77 Cal. Rprt. 3d 96, 101 (2008), to the effect that "reverse veil piercing" is unnecessary since "the corporate form is not being used to evade a shareholder's personal liability because the shareholder did not incur the debt through the corporate guise and misuse the guise to escape personal liability for the debt" persuasive since our California colleagues' logic ignores the possibility that the individual used the corporation to shelter personal assets rather than the other way around. As a result, we are not persuaded by Defendants' contentions that "reverse veil piercing" is not a recognized substantive claim in North Carolina and that we should refuse to recognize it as one for policy reasons.

Thus, for all of these reasons, we conclude that Plaintiff's complaint alleges sufficient facts to state a claim for piercing Catawba's corporate veil, since its pleading asserts facts that, if proven to be true, would establish all the elements of the "instrumentality rule" utilized in this jurisdiction to determine whether the corporate veil should be pierced. *See State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 184 N.C. App. 613, 646 S.E.2d 790 (2007), *rev'd in part on other grounds by*, 362 N.C. 431, 666 S.E.2d 107 (2008). As a result, we conclude that the trial court erred in concluding that Plaintiff's complaint failed to state a claim for piercing Defendant Catawba's corporate veil.

FISCHER INV. CAPITAL, INC. v. CATAWBA DEV. CORP.

[200 N.C. App. 644 (2009)]

## II: Fraudulent Transfer

**[2]** Next, we address Plaintiff's contention that the trial court erred by concluding that Plaintiff's complaint failed to state a claim to the effect that the conveyance of the Grovestone property from Defendant Catawba to Defendant Ridgeline should be set aside as a fraudulent transfer pursuant to N.C. Gen. Stat. §§ 39-23.4(a)(1) and 39-23.5(a). Although Defendants contend that the transfer of the Grovestone Property from Defendant Catawba to Defendant Ridgeline was one component of a larger transaction that was intended to benefit, rather than harm, Plaintiff, such a contention does not obviate the necessity for a thorough review of the allegations set out in Plaintiff's complaint in light of the applicable law. After completing such a review, we conclude that the allegations of Plaintiff's complaint suffice to state a claim for fraudulent transfer under both statutory theories.[6]

### N.C. Gen. Stat. § 39-23.4(a)(1)

N.C. Gen. Stat. § 39-23.4 provides, in pertinent part, that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    (1) With intent to hinder, delay, or defraud any creditor of the debtor;

. . . .

---

6. Defendants argue that, having accepted "more than $1 million in cash together with the unsecured [Second] Grovestone Note in complete satisfaction of the [Grovestone] Note and Grovestone deed of trust," Plaintiff "should now be estopped on the face of the complaint to question the integrity of Catawba and the transfer to Ridgeline after accepting the benefits of negotiating with Catawba for favorable terms under the [Grovestone] Note and the [Second Grovestone] Note." Although a complaint may be dismissed pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) on estoppel grounds, *Shell Island Homeowners Asso., Inc. v. Tomlinson*, 134 N.C. App. 217, 226, 517 S.E.2d 406, 413 (1999), we do not believe that the principle that " 'a party will not be allowed to accept benefits which arise from certain terms of a contract and at the same time deny the effect of other terms of the same agreement,' " *Brooks v. Hackney*, 329 N.C. 166, 173, 404 S.E.2d 854, 859 (1991) (quoting *Capital Outdoor Advertising, Inc. v. Harper*, 7 N.C. App. 501, 505, 172 S.E.2d 793, 795 (1970)), requires dismissal of Plaintiff's complaint in this case since we are not convinced that the relief Plaintiff seeks necessarily violates the principle in question. However, we recognize that this "estoppel by benefit issue" may well recur and that Defendants retain the right to advance an "estoppel by benefits" claim, with the applicability and effect of that legal doctrine to be determined at subsequent stages of this proceeding.

(b) In determining intent under subdivision (a)(1) of this section, consideration may be given, among other factors, to whether:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) The transfer was of substantially all the debtor's assets;

. . . .

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred;

N.C. Gen. Stat. § 39-23.4. In seeking to assert a claim pursuant to N.C. Gen. Stat. § 39-23.4(a)(1), Plaintiff's complaint alleged that:

43. Mark Lewis and Catawba, as his instrumentality, transferred the Grovestone Property to Ridgeline fraudulently, and with the intent to hinder, delay, and defraud Fischer, as a creditor of Mark Lewis, in violation of N.C. [Gen. Stat.] § 39-23.4(a)(1).

44. The following factors, among others enumerated in N.C. [Gen. Stat.] § 39-23.4(b), support the determination that Mark Lewis and Catawba fraudulently transferred the Grovestone Property to Ridgeline in violation of N.C. [Gen. Stat.] § 39-23.4(a)(1):

a. Mark Lewis and Catawba misrepresented and otherwise concealed the nature of the Grovestone Property transaction with Ridgeline from Fischer;

b. The Grovestone Property constituted all or substantially all of the assets of Catawba, through Catawba, of Mark Lewis;

c. Mark Lewis and Catawba transferred the Grovestone Property to Ridgeline shortly after HCL defaulted on the HCL Note on which Mark Lewis is liable as a guarantor;

   d. Mark Lewis and Catawba transferred the Grovestone Property to Ridgeline at the time that Mark Lewis became obligated to Fischer on the Second Grovestone Note;

   e. The transfer of the Grovestone Property from Catawba to Ridgeline should be deemed a transfer to an "insider" in that Ridgeline is controlled by Debra Lewis, who is Mark Lewis's wife and the secretary of Catawba;

   f. On information and belief, Mark Lewis has retained functional control over the Grovestone Property after its transfer from Catawba to Ridgeline;

   g. Before Mark Lewis and Catawba transferred the Grovestone Property to Ridgeline, Fischer had threatened Lewis with suit on the HCL Note;

   h. Before Mark Lewis and Catawba transferred the Grovestone Property to Ridgeline, Fischer had threatened Lewis with foreclosure on the Grovestone Deed of Trust;

   i. On information and belief, the value of the consideration actually received by Catawba from Ridgeline for the Grovestone Property was not reasonably equivalent to the value of the Grovestone Property; and

   j. On information and belief, Catawba was insolvent when it transferred the Grovestone Property to Ridgeline, or Catawba became insolvent shortly thereafter.

The language of Plaintiff's complaint, which alleges that Defendant Mark Lewis and Defendant Catawba,[7] "as his instrumentality, transferred the Grovestone Property to [Defendant] Ridgeline fraudulently, and with the intent to hinder, delay, and defraud [Plaintiff], as a creditor of [Defendant] Mark Lewis," tracks the relevant statutory language almost verbatim. In addition, Plaintiff's complaint alleges facts supporting several of the more specific factors enumerated in N.C. Gen. Stat. § 39-23.4(b), including: (1) that Defendants concealed

---

   7. Although Defendants correctly note that only a "debtor" as defined in N.C. Gen. Stat. §39-23.1(6) (defining a "debtor" as "a person who is liable on a claim") can be the subject of a fraudulent transfer action, Plaintiff's complaint alleges that Defendant Catawba was essentially Defendant Mark Lewis' alter ego and that Defendant Catawba's assets should be made available for the purpose of satisfying Plaintiff's claims against Defendant Mark Lewis. For that reason, we do not believe, given the unusual facts present here, that the fact that Defendant Catawba was directly indebted to Plaintiff on the HCL Note precludes it from being a "debtor" as defined in N.C. Gen. Stat. § 39-23.1(6) in the event that it is, in fact, an alter ego of Defendant Mark Lewis.

the nature of the transfer; (2) that the property was "all or substantially all" of the assets owned by Defendant Catawba and Defendant Mark Lewis; (3) that Defendant Mark Lewis had been threatened with foreclosure on the deed of trust applicable to the Grovestone Property and with the filing of a civil suit as a result of his default on the HCL Note; (4) and that Defendant Catawba "was insolvent when it transferred the Grovestone Property to Ridgeline, or Catawba became insolvent shortly thereafter." Furthermore, given the allegation that, "on information and belief, the value of the consideration actually received by Catawba from Ridgeline for the Grovestone Property was not reasonably equivalent to the value of the Grovestone Property," we do not believe that Plaintiff's claim based on N.C. Gen. Stat. § 39-23.4(a)(1) is subject to dismissal for failure to state a claim based on the protections available to a "person who took in good faith and for a reasonably equivalent value" pursuant to N.C. Gen. Stat. 39-23.8(a). As a result, we conclude that Plaintiff's complaint alleges sufficient facts to state a claim for fraudulent transfer pursuant to N.C. Gen. Stat. § 39-23.4(a)(1) and that the trial court erred by determining that Plaintiff's complaint failed to do so.[8]

### N.C. Gen. Stat. § 39-23.5(a)

Finally, N.C. Gen. Stat. § 39-23.5 provides that:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

In support of its attempt to assert a fraudulent transfer claim pursuant to N.C. Gen. Stat. § 39-23.5, Plaintiff alleged in its complaint that:

---

8. Defendants argue that Ridgeline is not an "insider" as that term is defined in N.C. Gen. Stat. 39-23.1(7). Given that Ridgeline's status as an "insider" is not critical to the viability of Plaintiff's attempt to allege a claim pursuant to N.C. Gen. Stat. § 39-23.4(a)(1), N.C. Gen. Stat. § 39-23.4(b) (stating that "[i]n determining intent under subdivision (a)(1) of this section, consideration may be given, among other factors, to" the following criteria), we express no opinion at this time as to whether Plaintiff's allegations, if supported by sufficient evidence, would permit a finding that the transfer of the Grovestone Property from Defendant Catawba to Defendant Ridgeline would constitute a transfer to an "insider" as alleged in Plaintiff's complaint.

47. [Plaintiff's] claim against Mark Lewis, who controlled and dominated the operation of Catawba and operated Catawba as his alter ego, arose before the transfer of the Grovestone Property by Catawba and Mark Lewis to Ridgeline.

48. On information and belief, Catawba and Mark Lewis made the transfer of the Grovestone Property to Ridgeline without Catawba's receiving a reasonably equivalent value in exchange for the transfer from Ridgeline.

49. Accordingly, Mark Lewis and Catawba, as his instrumentality, transferred the Grovestone Property to Ridgeline, in violation of N.C. [Gen. Stat.] § 39-23.5(a).

50. Fischer is entitled to the remedies set forth in [N.C. Gen. Stat. §] 39-23.7, including avoidance of the transfer of the Grovestone Property from Catawba to Ridgeline to the extent necessary to satisfy Fischer's claim on the HCL Note; an injunction against any further transfer of the Grovestone Property; and an Order permitting Fischer to execute against the Grovestone Property to satisfy the debt on the HCL Note and the Second Grovestone Note, as they have been reduced to judgment.

As required by N.C. Gen. Stat. § 39-23.5(a), Plaintiff's complaint alleged that "Fischer's claim against Mark Lewis . . . arose before the transfer of the Grovestone Property by Catawba and Mark Lewis to Ridgeline." In addition, as is also required by N.C. Gen. Stat. § 39-23.5(a), Plaintiff's complaint alleged that "Catawba and Mark Lewis made the transfer of the Grovestone Property to Ridgeline without Catawba's receiving a reasonably equivalent value in exchange for the transfer." Having previously alleged that "Catawba was insolvent when it transferred the Grovestone Property to Ridgeline" or that "Catawba became insolvent shortly thereafter"; that "Catawba's conveyance of the Grovestone Property to Ridgeline has left Catawba insolvent"; and that Defendant "Mark Lewis' interest in Catawba and, through Catawba, in the Grovestone Property, was one of his few, if not his only, substantial personal asset[s]," Plaintiff's complaint complied with the requirement that a claim advanced pursuant to N.C. Gen. Stat. § 39-23.5(a) include a showing that "the debtor [be] insolvent at [the time of the transfer] or [that] the debtor became insolvent as a result of the transfer or

obligation."[9] Thus, we conclude that Plaintiff's complaint alleges facts sufficient to state a claim for a fraudulent transfer pursuant to N.C. Gen. Stat. § 39-23.5(a). As a result, the trial court erred by dismissing Plaintiff's claim under N.C. Gen. Stat. § 39-23.5(a) and pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6).

## Conclusion

A careful review of the allegations of Plaintiff's complaint establishes that Plaintiff adequately pled each of the three claims that it attempted to assert against Defendants. For that reason, the trial court erred by dismissing Plaintiff's complaint for failure to state a claim for which relief could be granted pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). The extent to which Plaintiff is able to adduce facts that support the allegations set out in its complaint is, of course, an entirely different issue that can be examined at later stages of this proceeding. Similarly any issues that arise in attempting to "undo" the transfer of the Grovestone Property from Defendant Catawba to Defendant Ridgeline or in attempting to fashion a remedy that does not run afoul of the doctrine of "estoppel by benefit" are "fair game" for consideration on another day as well. As a result, we reverse that portion of the trial court's Judgment of Dismissal that dismisses Plaintiff's complaint pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) and remand this case to the trial court for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED

Judges ELMORE and STROUD concur.

---

9. Although Defendants point out that Plaintiff has not alleged that Defendant Mark Lewis "was insolvent at that time or . . . become insolvent as a result of the transfer or obligation," we are not persuaded that Plaintiff's failure to allege that Defendant Mark Lewis was insolvent renders its complaint insufficient given the fact that the challenged transaction was between Defendant Catawba and Defendant Ridgeline.